```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JAMES LAVENDER AND DIANE              MEMORANDUM AND ORDER
LAVENDER f/d/b/a LAVENDER             09-CV-1726 (JS)
AUTO SALES,                           Bankr. Case No. 07-01172

          Debtors-Appellants,

     - against -

MANHEIM'S PENNSYLVANIA
AUCTION SERVICES, INC. d/b/a
MANHEIM AUTO AUCTION AND
MANHEIM AUTOMOTIVE FINANCIAL
SERVICES, INC.,

          Creditors-Appellees.
--------------------------------X
```

APPEARANCES:
For Appellants:     Jeffrey Herzberg, Esq.
                    Zinker & Herzberg, LLP
                    278 East Main Street, Suite C
                    PO Box 866
                    Smithtown, NY 11787

For Appellees:      Daniel C. Ross, Esq.
                    Keegan & Keegan Ross & Rosner, LLP
                    147 North Ocean
                    P.O. Box 918
                    Patchogue, NY 11772

SEYBERT, District Judge:

On February 9, 2009, U.S. Bankruptcy Judge Alan S. Trust issued an Order concluding that, under 11 U.S.C. § 523(a)(2)(B), Debtor James M. Lavender could not discharge his $518,728.27 debt to Creditor Manheim's Pennsylvania Auction Services, Inc. d/b/a Manheim Auto Auction and Manheim Financial Services, Inc. ("Manheim"). Mr. Lavender appeals this decision.

For the foregoing reasons, the Bankruptcy Court's Order is AFFIRMED.

BACKGROUND

Mr. Lavender, together with his wife Diane Lavender (together, "Debtors"), did business as Lavender Auto Sales, a sole proprietorship located On Long Island. Through Lavender Auto Sales, Debtors operated a used car business. Among other things, Lavender purchased vehicles that Manheim then sold at Manheim's car auction business.

In 1994, Mr. Lavender entered into a floor plan financing agreement with Manheim. Under the agreement, Manheim advanced money to Mr. Lavender to enable him to purchase vehicles. Mr. Lavender then sold these vehicles through Manheim and repaid Manheim's loans with the sale proceeds. Initially, Manheim extended Mr. Lavender a $300,000 credit line. Within a few months, however, Manheim increased Mr. Lavender's credit line to $500,000.

Sometime in 1998, Mr. Lavender sought to increase his credit line to $900,000. To this end, Mr. Lavender drafted a financial statement on September 2, 1998 ("Financial Statement") and sent it to Manheim. This Financial Statement was materially false in many ways. Specifically, the Financial Statement: (1) set forth that Mr. and Mrs. Lavender owned three real properties they had no interest in; (2) understated Mr. Lavender's mortgage

debt with respect to another real property; (3) listed a life insurance policy with a cash surrender value of $100,000 that Mr. Lavender did not own; and (4) listed $50,000 worth of phantom stocks and bonds. A few weeks after drafting this fraudulent statement, Mr. Lavender, on behalf of Lavender Auto Sales, executed and personally guaranteed a $900,000 promissory note in Manheim's favor. Manheim, in turn, increased the credit line to $900,000. Eight months later, however, Manheim decreased the credit line to $650,000.

Mr. Lavender's and Manheim's business relationship ended in late 1999, apparently after Mr. Lavender failed to make good on outstanding loans he owed Manheim. In 2000, Manheim sued Debtors in New York state court. In this action, Manheim won a $518,728.27 judgment against Mr. Lavender, reflecting $339,403.37 owed on outstanding loans, plus prejudgment interest, costs, and disbursements.

Manheim seeks to have this judgment survive Mr. Lavender's subsequent bankruptcy. Under 11 U.S.C. § 523(a)(2)(B), a debt survives bankruptcy if it resulted from a written statement: "(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." Finding that § 523(a)(2)(B)'s requirements were met,

the Bankruptcy Court concluded that Mr. Lavender could not discharge his debt to Manheim in bankruptcy.

Mr. Lavender appealed. On appeal, Mr. Lavender raises three issues: (1) the Bankruptcy Court should have awarded him summary judgment, because Manheim failed to raise a genuine issue of material fact at that stage of litigation; (2) the Bankruptcy Court should have sanctioned Manheim for alleged discovery abuses; and (3) after trial, the Bankruptcy Court improperly found that Manheim "reasonably relied" on the Financial Statement in extending Mr. Lavender's credit line.

DISCUSSION

I. Standard Of Review

"On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANK. P. 8013. A bankruptcy court's "finding[s] of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." Id.; see also In re Momentum Mfg. Co., 25 F.3d 1132, 1136 (2d Cir. 1994); In re PCH Assoc., 949 F.2d 585, 597 (2d Cir. 1992). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Factual findings must be upheld if plausible in light of

4

the record viewed in its entirety. Robbins Int'l, Inc. v. Robbins MBW Corp. (In re Robbins Int'l, Inc.), 275 B.R. 456, 464-65 (S.D.N.Y. 2002) (internal quotations, citations omitted). A bankruptcy court's legal conclusions are reviewed de novo. See In re Momentum Mfg. Co., 25 F.3d at 1136.

## II. The Bankruptcy Court Did Not Commit Reversible Error In Denying Mr. Lavender's Summary Judgment Motion

Mr. Lavender first argues that the Bankruptcy Court erred in not awarding HIM summary judgment on March 28, 2007. This argument has two parts. First, Mr. Lavender appears to argue that the Bankruptcy Court should have awarded HIM summary judgment because Manheim filed its opposition papers a few days late and supposedly included information it failed to disclose during discovery. Mr. Lavender ignores, however, that the Bankruptcy Court had significant freedom to forgive technical violations of its rules in order to facilitate a "fair" and "just" outcome. See Wight v. BankAmerica Corp., 219 F.3d 79, 85 (2d Cir. 2000). Considering this "broad discretion" to excuse rule violations, the Bankruptcy Court did not commit reversible error in failing to award Mr. Lavender summary judgment due to Manheim's alleged procedural defaults. Farook v. Bailey, 05-CV-3785, 2007 WL 2076764, *2 (S.D.N.Y. 2007); Banco Central de Paraguay v. Paraguay Humanitarian Foundation, Inc., 01-CV-9649, 2005 WL 53271, *8 (S.D.N.Y. 2005).

Mr. Lavender also argues that, at the summary judgment stage, Manheim failed to present "any evidence" supporting that: (1) Mr. Lavender published the Financial Statement; or that (2) Manheim "reasonably relied" on it in extending Mr. Lavender credit. The Court disagrees. The plain face of the Financial Statement indicates that Mr. Lavender published it. And, in opposing Mr. Lavender's summary judgment motion, Manheim produced an affidavit from Michael Wynn, its Vice President of Global Development, attesting that: (1) Manheim received the Financial Statement from Lavender Auto Sales; and (2) he personally relied on it in deciding to extend Mr. Lavender credit. See Docket No. 1-64 at ¶¶ 8-9. At the summary judgment stage, this evidence sufficed to meet Manheim's burden.

III. <u>The Bankruptcy Court Did Not Abuse Its Discretion In Failing To Sanction Manheim</u>

Mr. Lavender also argues that the Bankruptcy Court should have sanctioned Manheim for supposed discovery abuses. Specifically, Mr. Lavender complains that Manheim: (1) filed a tardy opposition to Mr. Lavender's summary judgment motion; (2) produced Mr. Wynn's affidavit after the discovery cut-off date and without previously disclosing Mr. Wynn as a potential witness in its interrogatory responses; (3) produced numerous documents late; and (4) failed to file Rule 26(a) initial disclosures.

The Court agrees that Manheim should have disclosed Mr. Wynn as a potential witness during discovery, and that it did not promptly comply with all its discovery obligations. But the Court does not review the Bankruptcy Court's sanctions determinations de novo. Instead, it reviews them only for an abuse of discretion. See In re Who's Who Worldwide Registry, Inc., 232 B.R. 38, 49 (E.D.N.Y. 1999). And here, the Bankruptcy Court did not abuse its discretion in failing to sanction Manheim. The Bankruptcy Court, in its discretion, was free to credit Manheim's explanations for its late document production. See Docket No. 1-76 (Affirmation in Opposition to Debtor's Motion for Sanctions). In addition, because the Bankruptcy Court permitted Mr. Lavender to file a second summary judgment motion after discovery truly ended, Mr. Lavender did not suffer any substantive prejudice from Manheim's procedural lapses. Consequently, on appeal, the Court cannot grant Mr. Lavender any relief based upon Manheim's discovery conduct.

IV. The Bankruptcy Court Did Not Commit Reversible Error In Finding That Manheim "Reasonably Relied" Upon The Financial Statement

Finally, Mr. Lavender contends that the Bankruptcy Court erred in finding, after trial, that Manheim "reasonably relied" upon the Financial Statement in deciding to lend him money. Whether Manheim reasonably relied upon Mr. Lavender's false Financial Statement in deciding to extend credit is an

issue of fact. In re Bonnanzio, 91 F.3d 296, 304 (2d Cir. 1996). Consequently, the Court will reverse the Bankruptcy Court's findings only for clear error. See Id.; see also In re Shaheen, 111 B.R. 48, 53 (S.D.N.Y. 1990).

Here, the Bankruptcy Court did not commit clear error or, for that matter, any error at all. As the Bankruptcy Court correctly found, Manheim's internal documents establish that it extended credit to Mr. Lavender in part based upon Mr. Lavender's false claim that he "own[ed] a lot of property on Long Island." Bankruptcy Court Op. at 15. Thus, Manheim actually relied upon Mr. Lavender's false statements. And, although Manheim failed to perform due diligence on the Financial Statement's claims, its reliance upon Mr. Lavender's false statements was nevertheless reasonable. See In re Erdheim, 180 B.R. 42, 46 (E.D.N.Y. Bankr. 1995) (creditor can reasonably rely upon debtor's false financial statement "even where the creditor failed to take steps to verify the information"). Manheim and Mr. Lavender had been business partners for "four and a half years." Bankruptcy Court Op. at 17; Matter of Garman, 643 F.2d 1252, 1257 (7th Cir. 1980) (considering creditor's "long-standing and apparently successful business relationship" with debtor in deciding whether creditor reasonably relied upon debtor's false financial statement). And, although Manheim failed to verify the specific information

8

listed on the Financial Statement, Manheim did run a credit check, obtain bank letters, and review Mr. Lavender's tax returns. See In re Sharp, 357 B.R. 760, 767 (N.D. Ohio Bankr. 2007) ("running a credit check and obtaining a copy of the Debtor's pay stub" relevant to reasonable reliance inquiry); In re Martin, 299 B.R. 234, 241-42 (C.D. Ill. Bankr. 2003) (considering, in reasonable reliance inquiry, fact that creditor ran debtor's credit score and reviewed debtor's tax returns). Taking all these factors into account, the Bankruptcy Court properly found that Manheim's reliance upon Mr. Lavender's false Financial Statement was reasonable.[1]

Mr. Lavender does make one creative argument concerning Manheim's reliance that deserves the Court's consideration. Specifically, Mr. Lavender argues that, because he only owed $339,403.37 to Manheim, he remained under the $500,000 debt limit he enjoyed prior to submitting the false Financial Statement. Thus, Mr. Lavender argues, the false Financial Statement was irrelevant to his resulting debt, because he could have run up this sum even if he had never

---

[1] Mr. Lavender contends that Manheim's reliance upon the Financial Statement was not reasonable in light of various "red flags" – specifically, the fact that the Financial Statement represented Debtors as having substantially more assets than their previous financial statements. This argument has some merit. But, in light of the various factors indicating Manheim's reasonable reliance, the Bankruptcy Court's rejection of it was not clear error.

9

sought to increase his credit line and thus never filed the false Financial Statement.

This argument has some appeal, but the Bankruptcy Court rejected it, holding specifically that Manheim "actually and reasonably relied on the 1998 Financial Statement for an <u>extension</u>, <u>renewal</u>, or <u>refinancing</u> of credit." Bankruptcy Court Op. at 14 (emphasis supplied). Thus, in the Bankruptcy Court's view, Manheim reasonably relied on the Financial Statement not just to increase Mr. Lavender's credit line, but also to "exten[d]" and "renew[]" Manheim's existing credit arrangements with him. This holding is not clearly erroneous. Among other things, the Bankruptcy Court noted that, because the 1998 Note contained "essentially the same [payment terms] as the 1994 notes," the 1998 Note "reflects an extension, renewal or refinancing of credit." <u>Id.</u> at 15.

CONCLUSION

For the foregoing reasons, Mr. Lavender's appeal is DENIED. The Bankruptcy Court's Order is AFFIRMED in its entirety.

SO ORDERED.

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         March 9, 2010